IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTIAN G. BIRABIL, | § | |
| AND LORRAINE BIRABIL, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-cv-2255-M |
| | § | |
| DOUGLAS MARTINEZ, | § | |
| MICHAEL HOLGUIN AND | § | |
| THE CITY OF DALLAS | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the Order of Reference dated January 25, 2016 (doc. 41), before the Court is *Defendant City of Dallas' Motion Pursuant to Rule 12(b)(6) to Dismiss the Plaintiff's Claims Alleged Against it in the Plaintiff's Second Amended Complaint*, filed October 13, 2015 (doc. 30). Based on the relevant filings and applicable law, the defendant's motion to dismiss should be **GRANTED**.

### I. BACKGROUND

On July 8, 2015, Christian G. Birabil and his daughter, Lorraine Birabil (Plaintiffs), filed suit against the City of Dallas (Defendant) and two of its police officers, Douglas Martinez and Michael Holguin (Officers), under 42 U.S.C. § 1983 and the Texas Tort Claims Act (TTCA). (doc. 1 at 1.)[1] They allege that Officers arrested them without probable cause; used "unreasonable, unnecessary, and excessive force" while arresting Mr. Birabil; and manufactured fraudulent criminal charges against Plaintiffs in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments. (doc. 26 at 1-2, 4.) They also allege negligence by Defendant under the TTCA. (*Id.* at 4.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Plaintiffs contend that on July 11, 2013, Ms. Birabil called 911 to report the unauthorized entrance into their home by "Tom," a "disgruntled business partner" of Mr. Birabil. (*Id.* at 2.) She also reported Tom was "loud and threatening." (*Id.*) Officers Martinez, Holguin, and Campell arrived at the home in two separate police cars.[2] (*Id.*) Officer Holguin initially approached Tom, who was outside when the three officers arrived. (*Id.*) Officer Martinez separately approached Mr. Birabil, asked him about the situation, directed him to produce identification, and ordered him to return to his home. (*Id.*) When Mr. Birabil attempted to open the door, "[Officer] Martinez jumped [him] from behind" and he fell to the floor. (*Id.*) Officer Holguin joined Officer Martinez, and the two allegedly "began kicking and hitting [him] in the head, gastrocnemius, his thighs, his chin and his back." (*Id.* at 2-3.) Officers then "used handcuffs to twist and break [his] left arm." (*Id.* at 3.)

Ms. Birabil recorded the incident on her phone, shouted at Officers about her father's medical conditions, asked them to take him to a hospital, and sought to provide them with his medication. (*Id.*) She was arrested for "interference with public duties," and Plaintiffs were transported to the Lew Sterrett Dallas County Jail. (*Id.*) At the jail, Mr. Birabil collapsed several times due to his diabetes, and he pleaded with Officers for a doctor. (*Id.*) Officers did not provide a doctor, and they reported that he "[threw] himself to the ground." (*Id.*)

The next day, on July 12, 2013, Mr. Birabil was released from jail, and he went to Baylor University Medical Center Emergency Room (Baylor). (*Id.*) A doctor diagnosed him with a "closed head injury" and "scabbed over laceration to the head." (*Id.* at 3-4.) The doctor also observed

---

[2] Officers Martinez and Holguin arrived together in the same police car, and Officer Campbell arrived separately. (doc. 26 at 3.) Officer Campbell is not a defendant to the lawsuit and no first name is identified for her. (*See id.*) Additionally, no other facts are provided regarding her or her actions at the Plaintiffs' home. (*See id.*)

2

bruising, pain, and swelling to the left bicep, left tricep, and palmar aspect of the left forearm, and bilateral thigh bruising, pain, and swelling. (*Id.* at 4.)

Plaintiffs allege that "[Defendant] had a policy and custom in place that enabled its Police Department's, agents and employees, to act with deliberate indifference to the constitutional rights of individuals." (*Id.* at 4.) They claim Defendant "trains its officers to cover unconstitutional acts, with false statements, if they are aware that their misconduct is being recorded in today's camera phone environment." (*Id.*) Plaintiffs also contend that Defendant allows its officers to participate in the editing of television programs Dallas Swat and First 48, and has final approval of the programs. (*Id.*) "Plaintiffs believe the [Defendant] routinely edits out unconstitutional acts, and adds verbiage [to Dallas Swat and First 48], where the original language has been deleted . . . [and] fosters the false 'resistance statements tactics' used by [Officers], when using unnecessary and unreasonable force applying handcuffs and other tangible personal property." (*Id.*) They further allege that "Defendant tolerates misconduct by its police officers and encourages misconduct by failing to adequately supervise, discipline, or train." (*Id.*)

## II.  RULE 12(b)(6)

Defendant moves under Rule 12(b)(6) to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted.  (doc. 30)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Defendant does not rely on any matters outside of the pleadings in support of its motion to dismiss.

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is *plausible on its face*." *Id.* at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

>misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

### III. SECTION 1983

Defendant first moves to dismiss Plaintiffs' claims under 42 U.S.C. § 1983 for alleged failure to state a plausible claim for municipal liability. (doc. 30 at 12.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Cox v. City of Dallas*, 430 F.3d 734, 748

5

(5th Cir. 2005); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

**A.     Policymaker**

Defendant contends that "[n]owhere in [t]his Complaint do [Plaintiffs] identify the City's final policymaker to whom the Court could attribute knowledge of the alleged City customs that the [Plaintiffs] assert led to a deprivation of their constitutional rights coupled with deliberate indifference to a risk of such deprivations." (doc. 30 at 14.)

The Fifth Circuit recently clarified in *Groden v. City of Dallas*, No. 15-10073, 2016 WL 3361186 (5th Cir. June 16, 2016), that "for purposes of Rule 12(b)(6), . . . a plaintiff is *not required* to single out the specific policymaker in his complaint." *Id.* at *1 (emphasis added).

> [T]to survive a motion to dismiss, [the plaintiff] needed only to plead facts—facts which establish that the challenged policy was promulgated or ratified by the city's policymaker. [His] complaint did not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme.

*Id.* at *3-4.[3] The case involved a claim against the City of Dallas for a "crackdown policy" of arresting vendors without probable cause "in retaliation for annoying-but-protected speech" in Dealey Plaza. *Id.* at *5. Because the plaintiff alleged that the city's official spokesman publically announced the new policy of cracking down on vendors in Dealey Plaza and gave media interviews describing the new policy, the Fifth Circuit found that the plaintiff had sufficiently pleaded promulgation or ratification by a policymaker even though he had not specifically identified one.

---

[3] The identity of the policymaker official is a question of state law and not of fact. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "Sometimes, a court can make this determination by consulting state statutes. . . . [or] courts may need to consult 'local ordinances and regulations.' " *Groden*, 2016 WL 3361186, at *3 n.5 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (per curiam) (consulting the Texas Government Code to determine the policymaker for Texas cities); *Jett*, 7 F.3d at 1245 (consulting the Texas Educational Code to determine the policymaker for Texas school districts); *Praprotnik*, 485 U.S. at 125).

*See id.* at *4.

The Fifth Circuit has recognized the distinction "between facts—which must be pled in a complaint and, ultimately, proven to a jury—and law in a recent § 1983 case." *Groden*, 2016 WL 3361186, at *3 (citing *Advanced Tech. Bldg. Sols., LLC v. City of Jackson*, 817 F.3d 163, 168-69 (5th Cir. 2016)). It has noted that under Texas law, the final policymaker for the City of Dallas is the Dallas City Council. *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (per curiam) (citing Texas Local Gov't Code Ann. § 25.029); *Groden*, 2016 WL 3361186, at *4 (citing *Bolton* and Texas Local Gov't Code Ann. § 25.029). Accordingly, to show that the City of Dallas acted unconstitutionally, a plaintiff must show that the city council promulgated or ratified an unconstitutional policy. *See Groden*, 2016 WL 3361186, at *4 ("Accordingly, we now face a single question: whether [the plaintiff] pled facts that, read in the light most favorable to him, show that the city council promulgated or ratified the challenged policy.").

Here Plaintiffs allege:

[t]he Defendant City of Dallas trains its officers to cover unconstitutional acts, with false statements, if they are aware that their misconduct is being recorded in today's camera phone environment. . . . This practice directly fosters the false ["]resistance statements tactics" used by the Defendants, Martinez and Holguin, when using unnecessary and unreasonable force applying handcuffs and other tangible personal property. Defendant tolerates misconduct by its police officers and encourages misconduct by failing to adequately supervise, discipline, or train.

(doc. 26 at 4.) They rely on Officers' actions during their arrest and their beliefs that Defendant allows officers to be involved with two television programs. Because Plaintiffs have alleged no facts that the policymaker, i.e., the Dallas City Council, promulgated or ratified an unconstitutional policy or from which a reasonable inference can be made that it promulgated or ratified an unconstitutional policy, they fail to allege sufficient facts to "raise [their] right to relief above the

speculative level." *See Twombly*, 550 U.S. at 555.

**B.      Official Policy or Custom**

Defendant contends that Plaintiffs failed "to identify *any* written policy that is facially unconstitutional," "plead any *facts* on which this Court could make a reasonable inference of a practice of City employees of unlawful seizure or of excessive force that is so persistent and widespread, so common and well settled, that it fairly represents official City policy," or "a single alleged instance of allegedly unlawful seizure and use of force" other than their own encounter with Officers. (doc. 30 at 16 (emphasis in original).)

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579

8

(citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

Here, Plaintiffs' complaint alleges that:

> Defendant City of Dallas had a policy and custom in place that enabled its Police Department's, agents and employees, to act with *deliberate indifference* to the constitutional rights of individuals. The Defendant City of Dallas *trains its officers to cover unconstitutional acts, with false statements, if they are aware that their misconduct is being recorded in today's camera phone environment*. The Defendant, City of Dallas allows its police officers to participate in the editing; and has final approval of telecast of its "Dallas Swat" and "First 48" programs. Based on belief and information, Plaintiffs believe the City of Dallas routinely edits out unconstitutional acts, and adds verbiage, where the original language has been deleted. This practice directly fosters the false" resistance statements tactics" used by the Defendants, Martinez and Holguin, when using unnecessary and unreasonable force applying handcuffs and other tangible personal property. Defendant tolerates misconduct by its police officers and encourages misconduct by failing to adequately supervise, discipline, or train.

(doc. 26 at 4) (emphasis added). It does not identify a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by Defendant's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. (*See* doc. 26.) It generally describes Plaintiffs' beliefs about editing of television shows, but only identifies a single incident of a constitutional violation.

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation

9

omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to plead municipal liability. 130 F.3d at 167. It also found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*. *Id.*

In addition, a single incident is insufficient to infer an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11–CV–3099–B–BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail."), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012).

Because they rely on a single incident and vague generalities and conclusions, Plaintiffs have not sufficiently alleged an official policy or custom, a necessary element to municipal liability under *Monell*, and therefore have failed to nudge their claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 555.

## C. <u>Moving Force</u>

Defendant also argues that Plaintiffs have pleaded only "raw conclusion[s]" regarding causation, but no facts to support an inference that a "City policymaker acted with deliberate indifference." (doc. 30 at 13, 17-10.)

Plaintiffs must adequately plead that the municipal policy or custom was the "moving force"

10

of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). A plaintiff therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (citing *Brown*, 520 U.S. at 407).

Here, Plaintiffs do not expressly allege that a policy was the "moving force" behind Officers' actions or address causation, only that "Defendant City of Dallas had a policy and custom in place that *enabled* its Police Department's, agents and employees, to act with deliberate indifference to the constitutional rights of individuals." (*See* doc. 26 at 4 (emphasis added).) They have failed to allege facts in support of causation, the third element of municipal liability. Accordingly, Plaintiffs have failed to allege sufficient facts to raise their right to relief above the speculative level. *See Twombly*, 550 U.S. at 555.

Plaintiffs argue in their response that "[Defendant] has *fair notice* of the claim as required by *Iqbal* and *Twombly* because it is in receipt of the video of the arrest," which was recorded by Ms.

11

Birabil. (doc. 36 at 5 (emphasis added).)[4] The video was not attached to or provided with the complaint. It is therefore not part of the "pleadings" considered on a motion to dismiss. *See Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (citation omitted); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 at 205 (applying principle to insurance contracts identified in complaint and submitted as part of a motion to dismiss). Even if Plaintiffs' description of the video's content is considered, however, it shows a single incident of alleged excessive force by Officers. Accordingly, Plaintiffs have failed to nudge their § 1983 claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570. Defendant's motion to dismiss on this claim should be granted.[5]

### IV. NEGLIGENCE

Defendant next moves to dismiss Plaintiffs' state law negligence claim because it has sovereign or governmental immunity under the TTCA.[6] (doc. 30 at 23.)

The TTCA "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.'" *Dorward v. Ramirez*, No. 3:09–CV–0018–D, 2009 WL 2777880, at *13

---

[4] Although Plaintiffs focus on "fair notice," *Iqbal* and *Twombly* considered plausibility of a plaintiff's claims in addition to mere notice. *See Twombly*, 550 U.S. at 570 (when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"); *Iqbal*, 556 U.S. at 678.

[5] Because dismissal is recommended on this ground, it is unnecessary to consider Defendant's other arguments regarding the applicability of specific constitutional amendments.

[6] Defendant's motion alleges that "[Plaintiffs] are not clear as to what claims they seek pursuant to the TTCA, but whatever it is, it must be based on *negligence*." (doc. 30 at 23) (emphasis in original). Plaintiffs' response does not refute this characterization in their response. (*See* doc. 36); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2011).

(N.D. Tex. Aug. 28, 2009) (citing *Tex. Dep't of Crim. J. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). "The TTCA's waiver of immunity constitutes the 'only . . . avenue for common-law recovery against the government' on a tort theory." *Id.* (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)). Furthermore, the TTCA's limited waiver of sovereign immunity expressly does not apply to claims "arising out of assault, battery, false imprisonment, or *any other intentional tort*." Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2011) (emphasis added).

Here, Plaintiffs allege that Officers intentionally jumped Mr. Birabil from behind; kicked and hit him in his head, gastrocnemius, thighs, chin, and back; and "used handcuffs to twist and break [his] left arm." (doc. 26 at 2-3.) Officers were also "consciously indifferent," "ignored his pleas for a doctor," and justified their conduct on a false resisting arrest claim. (*Id.* at 3.) The TTCA's limited waiver of sovereign immunity does not apply to intentional torts, however. *Swiat v. City of Fort Worth*, No. 4:10–CV–354–A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011).[7] This district has previously noted that "[a] plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Id.* (quoting *Harris Cty. v. Cabazos*, 177 S.W.3d 105, 112 (Tex. App.–Houston [1st Dist.] 2005, no pet.)). "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." *Id.* (quoting *Cabazos*, 177 S.W.3d at 111). Likewise, Plaintiffs' negligence claim is based on underlying intentional tort facts and framed as negligence under the TTCA to circumvent the intensional tort exceptions. Accordingly, Defendant is immune

---

[7] Texas courts have held that "[t]he fundamental difference between a negligence injury and an intentional injury is the specific intent to inflict injury." *White v. City of Dallas*, No. 3:12–CV–2145–O, 2013 WL 4475738, at *3 (N.D. Tex. Aug. 21, 2013) (quoting *Bridges v. Robinson*, 20 S.W.3d 104, 114 (Tex. App.–Houston [14th Dist.] 2000, no pet.)).

from Plaintiffs' claim under the TTCA, and its motion to dismiss on this ground should be granted.

## V. RECOMMENDATION

Defendant's Rule 12(b)(6) motion should be **GRANTED**, and Plaintiffs' claims against it should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on this 11th day of July, 2016.

                                                                          *[signature]*
                                                                          IRMA CARRILLO RAMIREZ
                                                                          UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                          *[signature]*
                                                                          IRMA CARRILLO RAMIREZ
                                                                          UNITED STATES MAGISTRATE JUDGE